| | |
|---|---|
| Samuel R. Randall (No. 024517)<br>**RANDALL LAW PLLC**<br>4742 North 24th Street, Suite 300<br>Phoenix, Arizona 85016<br>Telephone:   602.328.0262<br>Facsimile:   602.926.1479<br>Email:   srandall@randallslaw.com | Richard J. (Rex) Burch*<br>**BRUCKNER BURCH PLLC**<br>11 Greenway Plaza, Suite 3025<br>Houston, Texas 77046<br>Telephone:   713.877.8788<br>Facsimile:   713-877-8065<br>Email:   rburch@brucknerburch.com |

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone:   713.352.1100
Facsimile:   713.352.3300
Emails:   mjosephson@mybackwages.com
         adunlap@mybackwages.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PALAZUELOS AND THE PUTATIVE CLASS MEMBERS**

**UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
TUCSON DIVISION**

| | |
|---|---|
| Victor Palazuelos, Individually and for Others Similarly Situated,<br><br>        Plaintiff,<br><br>   v.<br><br>HSGI, Inc., a Georgia for-profit corporation,<br><br>        Defendant. | **Case No. _____**<br><br>**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT FOR DAMAGES**<br><br>**(1)  Failure to Pay Overtime Wages (Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*); and**<br>**(2)  Failure to Timely Pay Earned Wages (Arizona Wage Act, A.R.S. §§ 23-350, *et seq.*)**<br><br>**(Jury Trial Demanded)** |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. Victor Palazuelos ("Palazuelos") brings this class and collective action to recover unpaid wages and other damages from HSGI, Inc. ("HSGI").

2. HSGI employed Palazuelos as an Aircraft Maintenance Technician in Tucson, Arizona.

3. HSGI paid Palazuelos by the hour.

4. Although Palazuelos regularly worked more than 40 hours in a week, HSGI did not pay him overtime at the proper premium rate required by the Fair Labor Standards Act ("FLSA").

5. Instead, HSGI uniformly paid Palazuelos (and other workers like him) per diems that HSGI intentionally excluded when calculating these workers' regular rates of pay for overtime purposes (HSGI's "per diem pay scheme").

6. HSGI's uniform per diem pay scheme violates the FLSA by depriving Palazuelos (and other workers like him) of overtime pay at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for hours worked after 40 in a workweek.

7. Likewise, as a result of its illegal per diem pay scheme, HSGI also willfully withheld these earned overtime wages from Palazuelos (and other workers like him who worked for HSGI in Arizona), which these employees reasonably expected to receive once they were due.

8. But as a result of HSGI's illegal per diem pay scheme, these earned overtime wages remain unpaid.

9. Thus, HSGI's uniform per diem pay scheme violates the Arizona Wage Act ("AWA") by depriving Palazuelos (and other workers like him in Arizona) of timely payment of earned overtime wages.

**JURISDICTION AND VENUE**

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

12. This Court has specific personal jurisdiction over HSGI with respect to this action because HSGI conducts substantial business in Arizona, including employing workers (like Palazuelos) in Arizona.

13. Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in Tucson, Arizona, which is in this District and Division. 28 U.S.C. 1391(b)(2).

**PARTIES**

14. Palazuelos worked for HSGI as an Aircraft Maintenance Technician (specifically, an Interior Technician) in Tucson, Arizona from approximately April 2023 until August 2023.

15. Throughout his employment, HSGI paid Palazuelos on an hourly basis.

16. Throughout his employment, HSGI paid Palazuelos per diems that HSGI intentionally excluded when calculating his regular rate of pay for overtime purposes.

17. Palazuelos's written consent is attached as **Exhibit 1**.

18. Palazuelos brings this class and collective action on behalf of himself and all other similarly situated hourly employees who HSGI paid under its uniform per diem pay scheme.

19. HSGI paid each of these employees per diems that HSGI intentionally excluded when calculating their regular rates of pay for overtime purposes.

20. Thus, HSGI deprived each of these employees of overtime wages at the proper premium rate in violation of the FLSA.

21. Likewise, HSGI willfully withheld earned wages from these employees that they reasonably expected to be timely paid in violation of the AWA because of its uniform per diem pay scheme.

22. The FLSA Collective of similarly situated employees is defined as:

> **All hourly HSGI employees who were paid per diems at any time in the past 3 years (the "FLSA Collective Members").**

23. Palazuelos also seeks to represent such a class under the AWA pursuant to FED. R. CIV. P. 23.

24. The Arizona Class of similarly situated employees is defined as:

> **All hourly HSGI employees in Arizona who were paid per diems at any time in the past 1 year prior to the filing of this Complaint (the "Arizona Class Members").**

25. The FLSA Collective Members and Arizona Class Members are collectively referred to as the "Putative Class Members."

- 4 -

1   26.   HSGI is a Georgia corporation headquartered in Dacula, Georgia.

2   27.   HSGI can be served through its registered agent: David A. Hendrick, Jr., 3522 Cosmo Court, Auburn, Georgia 30011, or wherever he may be found.

**FLSA COVERAGE**

28.   At all relevant times, HSGI was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

29.   At all relevant times, HSGI was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

30.   At all relevant times, HSGI was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, tools, and personal protective equipment—that have been moved in or produced for commerce.

31.   At all relevant times, HSGI has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

32.   At all relevant times, the Putative Class Members were HSGI's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

33.   At all relevant times, the Putative Class Members were engaged in commerce or in the production of goods for commerce.

34.   HSGI uniformly paid the Putative Class Members per diems that HSGI intentionally excluded when calculating their regular rates of pay for overtime purposes.

35. As a result of HSGI's per diem pay scheme, the Putative Class Members (which, as noted above, include Palazuelos) did not receive overtime at the premium rate required by the FLSA.

36. Specifically, HSGI did not pay the Putative Class Members at least 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked after 40 in a workweek.

37. HSGI's per diem pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTS**

38. HSGI bills itself as a "full-service staffing firm" that provides workers to companies across the country, including in Arizona.[1]

39. HSGI is not, and does not purport to be, a common carrier.

40. To perform the staffing services HSGI provides to its customers, HSGI employs personnel, including Palazuelos and the Putative Class Members.

41. HSGI "staffs" these workers to various companies across the country.

42. HSGI uniformly pays the Putative Class Members by the hour.

43. The Putative Class Members regularly work more than 40 hours a week.

44. But HSGI does not pay them overtime wages at the proper premium rate.

45. Instead, HSGI pays the Putative Class Members per diems that HSGI intentionally excludes when calculating their regular rates of pay for overtime purposes.

---

[1] https://hsgi-inc.com/ (last visited October 23, 2023).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

46. While exact job titles and job duties may differ, these employees are subject to the same or similar illegal pay practice(s) for similar work.

47. For example, Palazuelos worked for HSGI as an Aircraft Maintenance Technician (specifically, an Interior Technician) in Tucson, Arizona from approximately April 2023 until August 2023.

48. Throughout his employment, Palazuelos regularly worked more than 40 hours in a week.

49. Indeed, Palazuelos regularly worked 8 to 10 hours a day for 5 to 6 days a week (or 40 to 60 hours a week).

50. Palazuelos was HSGI's hourly employee.

51. Palazuelos reported his hours worked to HSGI.

52. HSGI's records reflect the hours Palazuelos worked each week.

53. Despite knowing Palazuelos regularly worked overtime, HSGI did not pay him overtime wages at the proper premium rate.

54. HSGI tries to mask its overtime violations by giving the appearance of paying overtime.

55. HSGI uses a well-known ploy for evading overtime requirements (like the FLSA's).

56. Specifically, HSGI labeled a large portion of Palazuelos's wages (and the other similarly situated workers' wages) as "per diem," (even though it is paid based on his hours worked).

57. When HSGI hired Palazuelos, HSGI listed his "taxable" wage as approximately $13/hour.

58. Likewise, HSGI listed Palazuelos's "taxable" overtime wage as approximately $21/hour.

59. But HSGI also paid him a "Per Diem" of approximately $21-$29 per hour for his first 40 hours worked only.

60. This "Per Diem" is tied to the number of hours Palazuelos worked each week.

61. Between his "taxable" wages and his so-called "per diem," Palazuelos's actual "regular rate" was approximately $35-$42/hour. 29 U.S.C. § 207(e).

62. But, as noted above, Palazuelos did not receive overtime based on his actual regular rate of approximately $35-$42/hour.

63. Instead, HSGI paid Palazuelos a taxable "overtime wage" of approximately $21/hour.

64. So rather than receiving approximately $52 to $63 an hour for each hour of overtime he worked, Palazuelos received overtime wages at a significantly lower rate than the FLSA required (only $21/hour).

65. In other words, HSGI willfully withheld and failed to timely pay these earned overtime wages to Palazuelos in violation of the FLSA and AWA.

66. HSGI pays the Putative Class Members according to the same illegal per diem pay scheme it imposed on Palazuelos.

67. HSGI pays the Putative Class Members on an hourly basis.

68. HSGI requires the Putative Class Members to report their hours worked to HSGI.

69. Thus, just as HSGI maintains records of the hours Palazuelos worked, it maintains records of the hours worked by the similarly situated Putative Class Members.

70. HSGI's records show the Putative Class Members regularly work more than 40 hours a week.

71. Every Putative Class Member worked more than 40 hours in at least one workweek during the last 3 years.

72. Indeed, like Palazuelos, the Putative Class Members typically work 8 to 10 hours a day for 5 to 6 days a week (or 40 to 60 hours a week).

73. But despite knowing the Putative Class Members regularly worked overtime, HSGI did not pay them overtime wages at the proper premium rate.

74. Instead, HSGI paid the Putative Class Members hourly per diems that HSGI intentionally excluded when calculating their regular rates of pay for overtime purposes.

75. In other words, HSGI willfully withheld earned overtime wages (at the proper premium rate) from the Putative Class Members in violation of the FLSA and AWA.

76. As a result, HSGI failed to timely pay the Putative Class Members overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for their hours worked after 40 in a workweek in willful violation of the FLSA and AWA.

**CLASS AND COLLECTIVE ACTION ALLEGATIONS**

77. Palazuelos incorporates all other paragraphs by reference.

78. Palazuelos brings his FLSA and AWA claims on behalf of himself and the other Putative Class Members.

79. The Putative Class Members are uniformly victimized by HSGI's per diem pay scheme, which is in willful violation of the FLSA and AWA.

80. Other Putative Class Members worked with Palazuelos and indicated they were paid in the same manner, performed similar work, and were subject to HSGI's same illegal per diem pay scheme.

81. Based on his experiences, Palazuelos is aware HSGI's illegal per diem pay scheme was imposed on the Putative Class Members.

82. The Putative Class Members are similarly situated in the most relevant respects.

83. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

84. The only relevant inquiry is whether the Putative Class Members worked more than 40 hours in a week and received per diems (which, by definition, they did).

85. Therefore, the specific job titles or precise job locations of the various Putative Class Members do not prevent class or collective treatment.

86. Rather, HSGI's uniform per diem pay scheme renders Palazuelos and the other Putative Class Members similarly situated for the purposes of determining their right to overtime pay.

87. HSGI's records reflect the number of hours worked each week by the Putative Class Members.

88. HSGI's records also show the Putative Class Members were paid per diems.

89. HSGI's records also reflect the Putative Class Members' overtime rates were based solely on their "taxable" hourly rates of pay (and excluded their per diems).

90. The back wages owed to Palazuelos and the other Putative Class Members can therefore be calculated using the same formula applied to the same records.

91. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to HSGI's records, and there is no detraction from the common nucleus of liability facts.

92. Therefore, the issue of damages does not preclude class or collective treatment.

93. Palazuelos's experiences are therefore typical of the experiences of the Putative Class Members.

94. Palazuelos has no interest contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

95. Like each Putative Class Member, Palazuelos has an interest in obtaining the unpaid wages owed under federal and/or Arizona law.

96. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

97. Absent this class and collective action, many Putative Class Members will not obtain redress for their injuries, and HSGI will reap the unjust benefits of violating the FLSA and AWA.

98. Further, even if some of the Putative Class Members could afford individual litigation, it would be unduly burdensome to the judicial system.

99. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

100. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

101. Among the common questions of law and fact are:

    a. Whether HSGI applied its per diem pay scheme uniformly to the Putative Class Members;

    b. Whether HSGI excluded the Putative Class Members' per diems when calculating their regular rates of pay for overtime purposes;

    c. Whether HSGI's per diem pay scheme deprived the Putative Class Members of the premium overtime wages they are owed under the FLSA;

    d. Whether HSGI's per diem pay scheme deprived the Putative Class Members of timely payment of earned overtime wages in violation of the AWA;

    e. Whether HSGI's decision to exclude the Putative Class Members' per diems from their regular rates of pay was made in good faith;

    f. Whether HSGI's decision not to pay the Putative Class Members overtime wages at the proper premium rate (based on *all* renumeration received) was made in good faith; and

    g. Whether HSGI's FLSA and AWA violations were willful.

102. Palazuelos knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

103. As part of its regular business practices, HSGI intentionally, willfully, and repeatedly violated the FLSA and AWA with respect to the Putative Class Members.

104. HSGI's illegal per diem pay scheme deprived Palazuelos and the other Putative Class Members of the premium earned overtime wages they are owed under federal and Arizona law.

105. There are many similarly situated Putative Class Members who have been denied overtime pay at the proper premium rate in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

106. This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

107. The Putative Class Members are known to HSGI, are readily identifiable, and can be located through HSGI's business and personnel records.

**HSGI'S WAGE VIOLATIONS WERE WILLFUL AND DONE IN RECKLESS DISREGARD OF THE FLSA AND AWA**

108. Palazuelos incorporates all other paragraphs by reference.

109. HSGI knew it was subject to the FLSA's overtime provisions.

110. HSGI knew the FLSA required it to pay non-exempt employees, like the Putative Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked after 40 in a workweek.

111. HSGI knew each Putative Class Member worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed because it required these workers to record their hours worked.

112. HSGI knew the Putative Class Members were its hourly employees.

113. HSGI knew it paid the Putative Class Members on an hourly basis.

114. HSGI knew it paid the Putative Class Members an hourly rate plus per diems.

115. HSGI knew the Putative Class Members' per diems were tied to their respective hours worked.

116. HSGI knew it based the Putative Class Members' overtime rates solely on their "taxable" hourly rates.

117. HSGI intentionally excluded the Putative Class Members' per diems when calculating their regular rates of pay for overtime purposes.

118. HSGI's per diem pay scheme was designed to mask its violations of the FLSA.

119. HSGI knew it was not a common carrier.

120. Nonetheless, HSGI intentionally excluded the Putative Class Members' per diems when calculating these employees' regular rates of pay for overtime purposes.

121. HSGI's decision to exclude the Putative Class Members' per diems when calculating their regular rates of pay for overtime purposes was neither reasonable, nor was the decision to exclude these employees' per diems when calculating their regular rates of pay for overtime purposes made in good faith.

122. Likewise, HSGI's failure to pay the Putative Class Members overtime wages at the proper premium rate was neither reasonable, nor was the decision not to pay these employees overtime wages at the proper premium rate made in good faith.

123. HSGI knew it was subject to the AWA.

124. HSGI knew the AWA required it to pay Arizona employees, like the Arizona Class Members, all their earned wages when they are due.

125. HSGI knew the AWA required it to pay Arizona employees, like the Arizona Class Members, all their earned overtime wages not later than sixteen days after the end of the most recent pay period.

126. HSGI knew the AWA prohibited from withholding or diverting any portion of wages earned by employees, like the Arizona Class Members.

127. Nonetheless, HSGI excluded the Arizona Class Members' per diems when calculating these employees' regular rates of pay for overtime purposes.

128. And HSGI withheld wages equal to the difference between the rate it actually paid the Arizona Class Members and the proper overtime rate they were owed for their overtime hours worked.

129. Thus, HSGI knew it failed to timely pay the Arizona Class Members earned wages.

130. HSGI knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA and AWA.

131. HSGI knowingly, willfully, and/or in reckless disregard carried out this illegal per diem pay scheme that systematically deprived the Putative Class Members of earned

overtime wages at the proper premium rate for the hours they worked after 40 in a workweek in violation of the FLSA and AWA.

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

132. Palazuelos incorporates all other paragraphs by reference.

133. Palazuelos brings his FLSA claims as a collective action on behalf of himself and the other FLSA Collective Members.

134. HSGI violated, and is violating, the FLSA by employing non-exempt employees (Palazuelos and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for the hours they worked after 40 in a workweek. 29 U.S.C. § 207(a).

135. HSGI's unlawful conduct harmed Palazuelos and the other FLSA Collective Members by depriving them of overtime wages at the proper premium rate they are owed.

136. Accordingly, HSGI owes Palazuelos and the other FLSA Collective Members the difference between the rate actually paid and the proper overtime rate.

137. Because HSGI knew, or showed reckless disregard for whether, its pay practice violated the FLSA, HSGI owes these wages for at least the past 3 years.

138. HSGI is liable to Palazuelos and the other FLSA Collective Members for an additional amount equal to all unpaid wages as liquidated damages.

139. Finally, Palazuelos and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II

### FAILURE TO PAY EARNED WAGES UNDER THE AWA
### (ARIZONA CLASS)

140. Palazuelos incorporates all other paragraphs by reference.

141. Palazuelos brings his AWA claim on behalf of himself and the other Arizona Class Members pursuant to FED. R. CIV. P. 23.

142. The conduct alleged violates the AWA (A.R.S. §§ 23-350, *et seq.*).

143. At all relevant times, HSGI was Palazuelos's and the other Arizona Class Members' "employer" within the meaning of the AWA. *See* A.R.S. § 23-350(3).

144. At all relevant times, HSGI employed Palazuelos and the other Arizona Class Members as its covered "employees" within the meaning of the AWA. *See* § 23-350(2).

145. Palazuelos's and the other Arizona Class Members' outstanding earned overtime wages are "wages" within the meaning of the AWA. *See* § 23-350(7).

146. The AWA requires employers, like HSGI, to timely pay employees, including Palazuelos and the other Arizona Class Members, "all wages due … up to that date" on their regular established paydays. A.R.S. § 23-351(C).

147. The AWA further requires employers, like HSGI, to timely pay employees, including Palazuelos and the other Arizona Class Members, all earned overtime wages no later than sixteen days after the end of the most recent pay period. A.R.S. § 23-351(C)(3).

148. The AWA prohibits employers, like HSGI, from withholding or diverting any portion of an employee's earned wages. A.R.S. § 23-352.

149. HSGI violated, and is violating, the AWA by failing to timely pay—and instead willfully withholding—earned overtime wages (at the proper premium rate) from Palazuelos and the other Arizona Class Members. *See* A.R.S. §§ 23-351(C)(3) and 23-352.

150. HSGI's unlawful conduct harmed Palazuelos and the other Arizona Class Members by depriving them of timely payment of the full overtime wages they are owed.

151. Accordingly, HSGI owes Palazuelos and the other Arizona Class Members the difference between the rate actually paid and the proper overtime rate, which to date, remains outstanding.

152. HSGI is liable to Palazuelos and the other Arizona Class Members for treble damages. *See* A.R.S. § 23-355.

153. Finally, Palazuelos and the other Arizona Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

## JURY DEMAND

154. Palazuelos demands a trial by jury.

## RELIEF SOUGHT

Palazuelos, individually and on behalf of the other Putative Class Members, seeks the following relief:

    a. An Order allowing this action to proceed as a collective action under the FLSA and directing notice be sent to all the FLSA Collective Members allowing them to join this collective action by filing a written notice of consent;

b. An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Palazuelos and his counsel to represent the interests of the FLSA Collective and Arizona Class;

d. An Order pursuant to Section 16(b) of the FLSA finding HSGI liable for unpaid overtime wages due to Palazuelos and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding HSGI liable to Palazuelos and the Arizona Class Members for unpaid earned wages owed under the AWA, plus treble damages;

f. An Order awarding attorneys' fees, costs, and expenses available under the FLSA and AWA;

g. A Judgment against HSGI awarding Palazuelos and the Putative Class Members all their unpaid overtime wages, liquidated damages, treble damages, attorneys' fees, costs, expenses, and any other penalties available under the FLSA and AWA;

h. An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

i. All such other and further relief to which Palazuelos and the Putative Class Members may show themselves to be justly entitled.

Dated: October 23, 2023.

Respectfully submitted,

**RANDALL LAW PLLC**

By: */s/ Samuel R. Randall*
    Samuel R. Randall (No. 024517)
    *Local Counsel for Plaintiff*
4742 North 24th Street, Suite 300
Phoenix, Arizona 85016
Phone: 602-328-0262
Fax: 602-926-1479
srandall@randallslaw.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: 713-352-1100
Fax: 713-352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: 713-877-8788
Fax: 713-877-8065
rburch@brucknerburch.com

*\*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PALAZUELOS & THE PUTATIVE CLASS MEMBERS**